

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-265-CR

HERMAN DELINE KNEELAND                                          APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Herman Deline Kneeland of two counts of possession with intent to deliver four grams or more but less than two hundred grams of a controlled substance, namely heroin and cocaine, and sentenced him to fifty years' confinement on each count, to run concurrently. In three points, Kneeland argues that the evidence is legally and factually insufficient to support

---

[1] *See* Tex. R. App. P. 47.4.

his conviction and that the trial court erred by admitting certain evidence over his rule of evidence 403 objection. We will affirm.

Just after 2:00 a.m. on October 18, 2006, Officer Jamie Pinkston and Officer Brett Mills of the Fort Worth Police Department observed and paced a black truck traveling at fifty-three miles per hour in a thirty-five mile per hour zone just west of East Loop 820 in Fort Worth. The officers attempted to stop the truck after the driver, Kneeland, negotiated a left turn without signaling, but the truck continued driving slowly for a short distance. When the truck stopped, Officer Pinkston approached the driver's side of the truck, and Officer Mills approached the passenger side of the truck. Kneeland did not have a driver's license, but he gave Officer Pinkston "all his information." Officer Mills determined the identity of the lone passenger in the truck, whom Kneeland identified at trial as Michael Moore, and discovered about $1,300 on him. Officer Pinkston called for assisting officers, and Officer Martinez and Sergeant Ost arrived.

The officers confirmed the identities of Kneeland and Moore and ran a check for outstanding warrants. Kneeland had two outstanding traffic warrants; Moore had none. Sitting in his patrol car, Officer Pinkston radioed Officer Martinez to arrest Kneeland for the outstanding warrants. Officer Martinez handcuffed Kneeland and patted him down. A plastic baggie with

capsules containing a brown, powdery substance fell to the ground through one of Kneeland's pant legs. Officer Martinez then shook Kneeland's clothes around his waistband, and a second plastic bag containing a white substance fell to the ground through Kneeland's other pant leg. Officer Martinez then pulled Kneeland's pants and underwear aside and observed another plastic bag "rubber-banded" to Kneeland's testicles and penis. He removed the bag, which contained a white powdery substance and a number of smaller clear plastic bag "corners" containing white powder.

Kneeland was placed in the back of Officer Pinkston's patrol car. Officers returned the $1,300 to Moore and released him. When Sergeant Ost opened the back door of Officer Pinkston's patrol car to take Kneeland's picture, Kneeland said "something to the effect of, that's my dope, the other guy doesn't have nothing to do with it." While transporting Kneeland to jail, Kneeland told Officer Pinkston, "Sir, that's my dope, that other guy had nothing to do with it."

Subsequent testing of the first baggie that fell from Kneeland's pant leg showed that it contained approximately sixty capsules containing approximately thirteen grams of heroin. A portion of the contents of the second bag that fell from Kneeland's pant leg contained approximately ten grams of cocaine. The

third plastic bag contained 2.97 grams of cocaine, and seventeen of the smaller bag corners analyzed contained 2.53 grams of cocaine.

At Kneeland's trial, an officer testified that a typical narcotics user would only purchase one to five heroin capsules for personal use and that the amount of narcotics in Kneeland's possession was a "dealer amount." Kneeland testified that he did not possess all of the narcotics.

In his first and second points, Kneeland challenges the legal and factual sufficiency of the evidence to show that he possessed the cocaine and heroin.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and

manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

To establish unlawful possession with the intent to deliver a controlled substance, the State must show that the defendant (1) exercised actual care, custody, control, or management over the controlled substance; (2) knew that he possessed a controlled substance; and (3) had the intent to deliver the controlled substance. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), 481.102(2), (3)(D) (Vernon Supp. 2008), 481.112(a), (d) (Vernon 2003);

5

*Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Howard v. State*, No. 01-06-00951-CR, 2008 WL 101374, at *2 (Tex. App.—Houston [1st Dist.] Jan. 10, 2008, no pet.) (mem. op.). Possession is "a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Penal Code Ann. § 6.01(b) (Vernon 2003). The State may offer direct or circumstantial evidence to prove a defendant's possession of narcotics. *Brown v. State*, 911 S.W.2d 744, 746–48 (Tex. Crim. App. 1995). In determining whether the defendant knew that he possessed narcotics, the jury is allowed to infer the defendant's knowledge from his acts, conduct, and remarks and from the surrounding circumstances. *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 852 (Tex. App.—Tyler 1996, no pet.).

The evidence shows that when Officer Martinez searched Kneeland incident to arrest, two plastic bags containing heroin and cocaine fell out of Kneeland's pant legs and onto the ground. Officer Martinez found a third plastic bag containing cocaine rubber-banded to Kneeland's penis and testicles. Kneeland told both Sergeant Ost and Officer Pinkston that the contraband was his and not Moore's.

Kneeland specifically contends that there was no testimony from any witness establishing that he actually possessed the heroin and cocaine and no evidence to link him to the majority of the drugs found during his arrest. But the testimony of Officer Pinkston, Officer Mills, and Officer Martinez regarding the discovery of the contraband on Kneeland's person—not in the truck, on Moore, or in some other location not in Kneeland's exclusive possession—evidences Kneeland's exercise of actual care, custody, control, or management over the contraband at the time of its discovery.

Kneeland testified that Moore is the one who sells drugs for a living; that the police officers discovered only a small amount of crack cocaine on him; that the remainder of the drugs fell out of the truck and onto the ground; that at no point did he possess the heroin, the powder cocaine, or the large baggie with crack cocaine; and that the officers all lied about the discovery of the narcotics. The jury, however, was the sole judge of the credibility of the witnesses, and it could have chosen to disbelieve Kneeland's testimony, as it clearly did. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

We hold that the evidence is both legally and factually sufficient to show that Kneeland possessed the heroin and cocaine. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we overrule Kneeland's first and second points.

7

In his third point, Kneeland specifically argues that the trial court abused its discretion by not conducting a rule 403 balancing test when the State sought to introduce into evidence State's exhibit numbers eleven and twelve, which consist of two docket sheets, two judgments, and two informations pertaining to two of Kneeland's prior convictions.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. Once appellant makes a rule 403 objection, the trial court must weigh the probativeness of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). A trial court, however, is not required to sua sponte place into the record any findings it makes or conclusions it draws when engaging in this test. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (stating that trial court need not conduct a formal hearing or even announce on the record that it has mentally conducted the balancing test). Rather, a judge is presumed to engage in the required balancing test once rule 403 is invoked. *Williams*, 958 S.W.2d at 195.

8

Here, the record demonstrates that Kneeland had "[n]o objection" to State's exhibit number eleven when the State offered it into evidence. Kneeland consequently failed to preserve this portion of his third point for appellate review. *See* Tex. R. App. P. 33.1(a)(1); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Regarding State's exhibit number twelve, there is nothing in the record to indicate that the trial court did not perform the rule 403 balancing test or that Kneeland requested and the trial court refused to include its findings on the record. We presume that the trial court conducted the required balancing test, and "we refuse to hold that the silence of the record implies otherwise." *See Williams*, 958 S.W.2d at 195–96. Accordingly, we overrule Kneeland's third point.

Having overruled Kneeland's three points, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 11, 2008

10